[Cite as *In re N.C.*, 2011-Ohio-6113.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| N.C. (D.O.B. 03/06/09) | : | Hon. W. Scott Gwin, P.J. |
| N.C. (D.O.B. 03/06/09) | : | Hon. William B. Hoffman, J. |
| MINOR CHILDREN | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2011-CA-00141 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of
                             Common Pleas, Family Court Division,
                             Case No. 2009JCV00290

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      November 21, 2011

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JERRY COLEMAN                         MARY G. WARLOP
STARK COUNTY JFS                      116 Cleveland Avenue N.W.
221 Third Street S.E.                 Suite 400
Canton, OH  44702                     Canton, OH  44702

*Gwin, P.J.*

**{¶ 1}** Appellant-father A.M.[1] appeals the May 31, 2011, judgment entry of the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights with respect to his minor twins, N.C. and N.C. and granted permanent custody of the children to appellee, Stark County Job and Family Services (hereinafter "SCJFS").

## I. PROCEDURAL HISTORY

**{¶ 2}** Appellant A.M is the biological father of N.C. [b. 03.06.2009] and N.C. [b. 03.06.2009].[2]

**{¶ 3}** On March 13, 2009, SCJFS filed a complaint alleging that the two children were neglected children and seeking temporary custody due to Mother's extensive history with the agency including her having lost custody of two older children to relatives. The children were removed from Mother's custody. The initial concerns that led to removal did not concern appellant. By Judgment Entry filed March 24, 2009 the trial court appointed a volunteer CASA Guardian ad Litem ["GAL"], to represent the best interests of the children.

**{¶ 4}** On May 7, 2009, the children were found to be neglected and continued in the temporary custody of the SCJFS. The court further found that the agency had made reasonable efforts to prevent the need for removal of the child from the home and approved and adopted the case plan. The children have been in the temporary custody of SCJFS since that time.

---

[1] For purposes of anonymity, initials designate appellant's name only. See, e.g., *In re C.C.,* Franklin App. No. 07-AP-993, 2008-Ohio-2803 at ¶ 1, n.1.
[2] The biological mother is not a party to this appeal.

**{¶ 5}** On August 4, 2009, SCJFS filed a Motion for Permanent Custody with respect to the biological mother. A hearing on that motion as well as the annual review hearing was scheduled for September 8, 2009. On September 9, 2009, appellant was identified as an alleged father to the children. On September 15, 2009 SCJFS requested appellant be joined to this action as a necessary party. Appellant submitted to genetic testing and was determined to be the father of the children. Paternity was established in October 2009.

**{¶ 6}** The SCJFS requested and the trial court granted two six-month extensions of temporary custody to allow parties to complete case plan services.

**{¶ 7}** When SCJFS became involved, appellant was engaged to his fiancée with whom he resided along with her eleven-year-old child. Appellant had been the primary father figure for his fiancée's child for the past nine years. N.C. and N.C. were the result of a brief encounter between appellant and Mother when appellant had cheated on his fiancée. Upon establishing paternity, appellant began visiting with the children once per week, and never missed any visits.

**{¶ 8}** In November of 2009, SCJFS developed a new case plan which contained the following services for appellant: 1.) Submit to a substance abuse evaluation at Quest recovery services; 2.) Submit to regular urine screens; 3.) Complete a parenting evaluation at Northeast Ohio Behavioral Health and follow any treatment recommendations. Appellant submitted to an evaluation at Quest Recovery Services and also cooperated with regular urine screens during the pendency of the case. Appellant admitted to a long-term history of marijuana use. He consistently tested negative for drug use since May 2010, according to both urine screens, and a hair

follicle test. Appellant never missed a requested urine screen and never submitted a dilute screen. Appellant established a consistent pattern of sobriety and compliance with the drug screen requests. Appellant successfully completed treatment at Quest Recovery, specifically the Intensive Outpatient program on June 3, 2010. Appellant also completed eight relapse prevention groups, attended the required twelve step meetings, and took part in aftercare sessions. According to the final report, appellant's prognosis was good.

{¶ 9} On January 12, 2011, SCJFS filed a motion to change legal custody of the children to appellant stating that appellant had completed a parenting evaluation, Goodwill Parenting classes, Quest treatment and had maintained sobriety since May 2010; and, appellant had reported having obtained independent housing and has income. On February 4, 2011, appellant also filed a motion for a change of legal custody and termination of SCJFS involvement. However, the reunification efforts were not successful and the children were not placed into Appellant's custody.

{¶ 10} Appellant also completed the NEOBH parenting evaluation. The evaluation was done and submitted in January of 2010. NEOBH recommended that appellant and his fiancée participate in counseling. Counseling between appellant and his fiancée never took place because appellant's fiancée, who is not a party to the case, refused to take part in services. However, appellant testified that he and his fiancée had actually met with a pastor together and talked a lot and that his fiancée had gone to the Catholic Community Center on her own.

{¶ 11} NEOBH also recommended that appellant participate in the Goodwill Home Based Parenting Program. SCJFS amended appellant's case plan to permit

appellant to engage in Goodwill Parenting Classes as an alternative and required appellant to establish stable and appropriate independent housing separate from his fiancée. This was due to appellant's fiancée being distraught over appellant having had children by another woman. Appellant successfully completed the Goodwill Parenting Class. The exit summary recommended that appellant obtain independent housing, continue to maintain sobriety, work the case plan, and complete the Home Based Program. Goodwill reported that appellant's motivation, attendance, and attitude were good and positive. Appellant was described as courteous, respectful, and attentive.

{¶ 12} Regarding visitation, there were never any problems with appellant's visits during the Goodwill Parenting classes. Appellant was very attentive to the children. The children were beginning to form a bond that has grown. Appellant was affectionate and put the children at ease. Appellant was interactive, patient, nurturing, and engaging with the children. The children began calling appellant "Daddy." The intensive, every-day program lasted from July 26, 2010 through October 14, 2010. After the classes were complete, appellant received supervised visitation at the agency weekly until the permanent custody motion was filed at which time it was decreased to every other week for two hours. Appellant visited his children from October 2009 through the permanent custody trial. Appellant never canceled a visit and came prepared. There were never any incidents or problems during the visitation. The caseworker testified that she personally observed visits and that they had began to form a bond and it has grown stronger and stronger.

{¶ 13} Appellant's fiancée ultimately did not want to continue with counseling or do the agency requested fingerprints or cooperate with this case. The caseworker did

not report finding any previous agency involvement with appellant, or his fiancée, or his fiancée's son over the past nine years. Appellant's fiancée has never been happy that appellant cheated on her. Appellant attempted to get her to engage in services and be supportive and accept the twins. Appellant was to at least make an effort to try couple's counseling with his fiancée, but that effort failed. He was required to attempt to engage in couple's counseling with his fiancée with the goal of reunifying him with the children in the home he shared with his fiancée. When that failed he was instructed to get independent housing.

{¶ 14} Appellant receives $674.00 in social security disability payment. Appellant established independent housing on his own. Appellant obtained independent housing in December 2010 and began fixing it up in January 2011. His lease was signed January 24, 2011. SCJFS visited his home January 26, 2011 and found it to be in deplorable condition. The worker scheduled another appointment to view any changes made to the residence but appellant cancelled the appointment. The Court continued the hearing to allow appellant's residence to be viewed.

{¶ 15} On the second day of trial, the case worker testified that she had recently inspected the home. She testified that she had the opportunity to inspect the home after the completion of part one of trial on May 3, 2011. The home had working utilities including electricity and running hot and cold water. The home was a three-bedroom home. She testified that the children's room contained two beds and a play area for the kids. There was an outfit for each child, play cars, and a television. There were bed linens on the children's beds and a dresser for the children. There were car seats for the children in the home. There was a smoke detector, which just needed a new battery.

She testified that there were towels in the bathroom, but no personal items. There was dish soap in the kitchen. The kitchen cupboards were clean. The refrigerator was clean and working. The caseworker indicated that the children had never been to appellant's home. However, she contended that the home was not prepared for the children's arrival because there was no food for the children other than two cans of Vienna sausage and chips. The caseworker acknowledged if appellant went to the store for one hour, he could acquire the necessary supplies and resolve the problem with basic sundries. The case worker testified that although the children's room was done up, the other two bedrooms were empty and not painted. However, she also stated that appellant reported that he slept on the couch and she recalled there being throw pillows on the couch, but could not remember whether there was a blanket as well. The caseworker indicated that there was substantial improvement in the home since her initial visit. Appellant had removed the mess, cleaned, painted the walls, and acquired furniture. SCJFS did not assist appellant in any way in his effort to establish independent housing. The trial court in its findings noted that "The agency's only assistance in helping father obtain independent housing was suggesting that he seek government subsidized housing." for which he was not eligible. "The father found this house solely through his own efforts. The court recognizes the efforts father has made in remaining drug free and obtaining housing"

{¶ 16} Appellant does not have custody of any of his prior children. Appellant has involuntarily lost custody of a prior child pursuant to a permanent custody proceeding.

{¶ 17} On March 4, 2011, the SCJFS filed an amended motion seeking permanent custody of the children. On May 3, 2011 and May 17, 2011 hearings were held on the motion for permanent custody.

{¶ 18} During the best interest phase, the caseworker again testified that appellant and the children are continuing to form their bond through visits. She indicated that appellant has been appropriate with the children. She stated that the children had visited with appellant once per week for almost one year and a half. Appellant has been appropriate at all of the visits. The children recognize appellant. The children know who he is and call him "Daddy."

{¶ 19} The GAL submitted a report to the court regarding the permanent custody motion in which the GAL recommended that the court grant permanent custody to SCJFS. Upon cross-examination, the GAL admitted that he had not observed appellant with the children since appellant was enrolled in Goodwill Parenting in August 2010. The GAL observed two of Father's Goodwill visits. He admitted that his previous GAL report was positive about what he observed at the visits with appellant and the children. He had not observed them together since then. He had not visited appellant's home prior to the permanent custody trial. He further testified that much of the information he put in his reports, he received from the caseworker.

{¶ 20} On May 31, 2011, the court issued a written judgment entry with findings of fact and conclusions of law determining that grounds existed to grant permanent custody to SCJFS. The court based its decision on the following grounds: the children have been in the temporary custody of SCJFS since May of 2009, thus 12 months or more within a consecutive 22-month period. The court found that the children could not

be returned to appellant or Mother based upon their failure to remedy the problems that led to the removal of these children. The court stated it was unable to find that either parent will remedy these problems within a reasonable period of time.

{¶ 21} Regarding the best interest of the children, the court found that although the children are bonded with appellant, the benefits of permanency outweighed the detriments of severing any existing bond. The court ordered all parental rights terminated and granted permanent custody to SCJFS.

{¶ 22} It is from this entry that the appellant-father has appealed.

## II. ASSIGNMENTS OF ERROR

{¶ 23} On appeal, appellant-father asserts the following assignments of error:

{¶ 24} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY.

{¶ 25} "II. THE TRIAL COURT ERRED BY FINDING GROUNDS FOR PERMANENT CUSTODY AS SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### A. Burden of Proof

{¶ 26} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, quoting *Stanley v. Illinois* (1972), 405 U.S. 645, 92 S.Ct. 1208. A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer* (1982), 455

U.S. 745, 753, 102 S.Ct. 1388. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.

{¶ 27} An award of permanent custody must be based upon clear and convincing evidence, R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.

### B. Standard of Review

{¶ 28} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *In re Myers III*, Athens App. No. 03CA23, 2004-Ohio-657, ¶ 7, citing *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. *In re Ohler*, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

### III. Requirements for Permanent Custody Awards

{¶ 29} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶ 30} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, *and* that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶ 31} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**A. Temporary Custody for at least 12 out of a consecutive 24 month period-**

**R.C. 2151.414(B)(1)(d).**

{¶ 32} Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." *In re: C. W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this time period, the court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." *Id.* at 167, 2004-Ohio-6411 at ¶ 26, 818 N.E.2d at 1180.

{¶ 33} In the case at bar, the children were removed from the home on March 13, 2009. The motion for permanent custody was filed March 16, 2011. Thus, the minor children have been in the temporary custody of the agency for more than twelve out of the last twenty-two months pursuant to R.C. 2151.414(B)(1)(d).

{¶ 34} In the case sub judice, the trial court found, pursuant to R.C. 2151.414 (B)(1)(d) that the children had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. The trial court further stated, pursuant to that the children could not be placed with either parent within a reasonable time. See, R.C. 2151. 414( B)(1)(a).

{¶ 35} As findings under R.C. 2151. 414(B)(1)(a) and R.C. 2151. 414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Langford Children,* Stark App. No.2004CA00349,

2005–Ohio–2304, at paragraph 17; *In re Dalton,* Tuscarawas App. No.2007 AP 0041, 2007–Ohio–5805, ¶ 88. Thus, having made this finding, which is supported by the record, it was not necessary for the trial court to also make a finding that the minor child could not be returned within a reasonable time. See *In re Whipple Children,* Stark App. No.2002CA00406, 2003-Ohio-1101, at ¶ 26.

**{¶ 36}** Thus, appellant's parental rights can lawfully be terminated upon a finding that the child has been in the temporary custody of SCJFS for 12 or more months of a consecutive 22-month period, and upon a finding that it is in the best interest of the child. R.C. 2151.414(B)(1)(d).

**{¶ 37}** In his First Assignment of Error appellant challenges only the trial court's determination concerning the best interest of the children. However, in his Second Assignment of Error, appellant challenges the trial court's finding ostensibly under R.C. 2151.414(B)(1)(a), that the children could not or should not be placed with the appellant within a reasonable period of time, based upon a finding that one or more of the factors set forth in R.C. 2151.414(E) are applicable, and also upon a separate finding that it is in the best interest of the child, using the best-interest factors set forth under R.C. 2151.414(D).

**A. Parental Placement within a Reasonable Time-R.C. 2151.414(B) (1) (a).**

**{¶ 38}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) – (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child

cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re: Hurlow* (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1997 WL 701328; *In re: Butcher* (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.

**{¶ 39}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

**{¶ 40}** "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

**{¶ 41}** "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the

conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

**{¶ 42}** "***

**{¶ 43}** "(16) Any other factor the court considers relevant."

**{¶ 44}** R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E) (7) to (11) apply.

**{¶ 45}** As previously noted, findings under R.C. 2151. 414(B)(1)(a) and R.C. 2151. 414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Langford Children,* Stark App. No.2004CA00349, 2005–Ohio–2304, at paragraph 17; *In re Dalton,* Tuscarawas App. No.2007 AP 0041, 2007–Ohio–5805, ¶ 88. Thus, the trial court having made this finding, which is supported by the record, was not required to also make a finding that the minor child could not be returned within a reasonable time. See *In re Whipple Children,* Stark App. No.2002CA00406, 2003-Ohio-1101, at ¶ 26.

{¶ 46} Therefore, appellant's reliance upon R.C. 2151.414(B)(1)(a) is misplaced because no finding under R.C. 2151. 414(B)(1)(a) was necessary under the facts of this case.

### B. The Best Interest of the Child.

{¶ 47} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶ 48} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal* (1994), 95 Ohio App.3d 309, 315. A finding that it is in the best interest of a child to terminate the parental rights of one parent is not dependent upon the court making a similar finding with respect to the other parent. The trial court would necessarily make a separate determination concerning the best interest of the child with respect to the rights of the mother and the rights of the father.

{¶ 49} In the case at bar, the trial court noted that appellant had been given two (2) six month extensions in order to work on his case plan. Further, SCJFS had at one

point attempted to return the children by filing a motion to change custody. However, appellant despite his diligent efforts was unable to provide a suitable home for the children.

{¶ 50} In the case of *In re: Summerfield*, Stark App. No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶ 51} Further, substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. *In re Watkins v. Harris* (Aug. 30, 1995), 9th Dist. No. 17068, at 9. The dispositive issue is not whether the parent has substantially complied with the case plan, but rather, whether the parent has substantially remedied the conditions that caused the child's removal. See, *e.g., In re McKenzie* (Oct. 18, 1995), 9th Dist. No. 95CA0015, at 7-8; *In re Pittman*, Summit App. No. 20894, 2002-Ohio-2208 at ¶ 60.

{¶ 52} In the case at bar, the trial court noted the many positive changes appellant has made in his life. The trial court recognized the bond he has formed with his children. The court found that despite this bond, the benefits of permanency in the children's lives, particularly given their ages, outweigh the detriments of severing any existing bond.

{¶ 53} We recognize the seriousness of the matter at hand. It is a firmly established principal of law that a parent has a fundamental right to care for and have custody of his or her child. *In re Shaeffer Children* (1993), 85 Ohio App.3d 683, 621

N.E.2d 426; citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. This fundamental right is not lost based on a parent's temporary loss of custody. Id at 751- 755. Indeed, the United States Supreme Court has stated, "It is cardinal with us that the custody, care and nurture of the child reside first in the parents," *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-1213, 31 L.Ed.2d 551; citing *Prince v. Massachusetts* (1944), 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645. Therefore, the termination of parental rights is an alternative of last resort; sanctioned only when the welfare of a child necessitates such action. See *In re Wise* (1994), 96 Ohio App.3d 619, 645 N.E.2d 812; *In re Cunningham* (1979), 59 Ohio St.2d 100, 391 N.E.2d 1034.

{¶ 54} Furthermore, "[p]ermanent termination of parental rights has been described as the 'family law equivalent of the death penalty in a criminal case.' Therefore, parents 'must be afforded every procedural and substantive protection the law allows.' "(Citations omitted.) *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, 682-683. Consequently, the right of parents to raise their children, coupled with the concomitant right of children to be raised by their parents, may not be interfered with unless the parent is unfit. *Baker v. Baker* (1996), 113 Ohio App.3d 805, 682 N.E.2d 661; citing *Quilloin v. Walcott* (1978), 434 U.S. 246, 98 S.Ct. 549.

{¶ 55} We too, find that the evidence demonstrated the successful efforts appellant-father had made in the case to regain custody of his children. On that point, the evidence demonstrates that the improvement the appellant-father has made in his life is tentative and, perhaps, temporary, and that he is at risk of relapse. The trial court

found that, regardless of appellant's compliance with aspects of his case plan, he was still not able to be a successful parent to his children.

{¶ 56} The trial court further made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children* (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.

{¶ 57} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App. No. CA-5758. "A fundamental premise of our criminal trial system is that 'the [trier of fact] is the lie detector.' *United States v. Barnard*, 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the [trier of fact], who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections that cannot be

conveyed to us through the written record. *Trickey v. Trickey* [1952], 158 Ohio St. 9, 13-14,106 N.E.2d 772, 774; *Bechtol v. Bechtol* (1990) 49 Ohio St.3d 21, 21, 550 N.E.2d 178, 179.

{¶ 58} In the case at bar, the judgment entry granting permanent custody specifically included a statement that the trial court had considered all the factors listed in R.C. 2151.414. "The fact that the trial court did not specifically mention each of the factors listed in R.C. 2151.414(D) does not mean that the trial court did not consider such factors." *In re Schupbach Children* (July 6, 2000), Tuscarawas App. 2000 AP 010005.

{¶ 59} The Guardian ad Litem also indicated that it was in the children's best interest to be placed in the permanent custody of SCJFS.

### IV. Conclusion

{¶ 60} For these reasons, we find that the trial court's determination that the children had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months was not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCJFS was in the children's best interest was not against the manifest weight or sufficiency of the evidence.

{¶ 61} Appellant's first and second assignments of error are overruled.

**{¶ 62}** The judgment of the Stark County Court of Common Pleas, Juvenile Court

Division is affirmed.

By Gwin, P.J., and

Farmer, J., concur;

Hoffman, J., concurs

separately

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. SHEILA G. FARMER

WSG:clw 1108

*Hoffman, J., concurring*

**(¶61)**     I concur in the majority's analysis and disposition regarding the trial court's "best interests" determination and satisfaction of R.C. 2151.414(B)(1)(d).

**(¶62)**     I write separately only to note I do not find R.C. 2151.414(B)(1)(a) was satisfied in this case.


_____

HON. WILLIAM B. HOFFMAN

[Cite as *In re N.C.*, 2011-Ohio-6113.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:
N.C. (D.O.B. 03/06/09)
N.C. (D.O.B. 03/06/09)
MINOR CHILDREN                                    :
                                                  :
                                                  :
                                                  :
                                                  :
                                                  :
                                                  :        JUDGMENT ENTRY
                                                  :
                                                  :
                                                  :
                                                  :        CASE NO. 2011-CA-00141


　　　　For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Stark County Court of Common Pleas, Juvenile Court Division is affirmed.  Costs to

appellant.


　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　HON. W. SCOTT GWIN

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　HON. WILLIAM B. HOFFMAN

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　HON. SHEILA G. FARMER