[Cite as *In re M.W.*, 2021-Ohio-1875.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: M.W., | : | JUDGES: |
| MINOR CHILD | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2021 CA 00019 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:    Civil appeal from the Stark County Court of
                            Common Pleas, Family Court Division,
                            Case No. 2018JCV00603

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     June 2, 2021

APPEARANCES:

For - Appellant                 For - Stark County JFS

AARON KOVALCHIK                 BRANDON J. WALTENBAUGH
116 Cleveland Avenue N.W.       402 Second Street S.E.
Suite 808                       Canton, OH  44702
Canton, OH  44702

*Gwin, P.J.*

{¶1} Appellant-mother ["Mother"] appeals the January 25, 2021 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights with respect to her minor child, M.W.[1] (b. June 4, 2018) and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services ["SCDJFS"].

## *Facts and Procedural History*

{¶2} Appellant is the biological mother of the child. On June 7, 2018, SCDJFS filed a complaint alleging the dependency and/or neglect of M.W. (DOB 6/4/2018). The complaint requested temporary custody of the child to SCDJFS. On June 7, 2018, the trial court held an emergency shelter care hearing and found that probable cause existed for the involvement of SCDJFS, continued residence of the child in the home would be contrary to his best interest and welfare, and SCDJFS had made reasonable efforts to prevent the need for placement and/or to make it possible for the child to return home or remain in the home.

{¶3} On June 15, 2018, SCDJFS filed an amended complaint correctly reflecting M.W.'s legal name with substantially similar language as the first complaint.

{¶4} On August 30, 2018, the trial court found the child to be dependent and placed the child into the temporary custody of SCDJFS. The child continuously remained in the temporary custody of SCDJFS from that day forward. The trial court also approved and adopted the initial case plan, found that SCDJFS had made reasonable efforts

---

[1] *See*, Juv.R. 5; OH ST Supp. R. 44(H) and 45(D) concerning the use of the names of juveniles.

to finalize the permanency planning in effect, and compelling reasons existed to preclude a filing of permanent custody.

{¶5} On December 5, 2018, the trial court reviewed the case. The trial court approved and adopted the case plan, found that SCDJFS had made reasonable efforts to finalize the permanency planning in effect, compelling reasons existed to preclude a filing of permanent custody, and ordered status quo.

{¶6} On May 3, 2019, the trial court again reviewed the case. The trial court approved and adopted the case plan, found that SCDJFS had made reasonable efforts to finalize the permanency planning in effect, compelling reasons existed to preclude a filing of permanent custody, and ordered status quo.

{¶7} On June 6, 2019, the trial court extended the temporary custody of M.W. to SCDJFS for six months. The trial court also found SCDJFS had made reasonable efforts to finalize the permanency planning in effect and ordered the status quo.

{¶8} On November 1, 2019, the trial court again reviewed the case. The trial court approved and adopted the case plan, found that SCDJFS had made reasonable efforts to finalize the permanency planning in effect, and ordered the status quo. The trial court found that no compelling reasons existed to preclude a filing of permanent custody.

{¶9} On November 6, 2019, SCDJFS filed a motion seeking permanent custody of the child.

{¶10} On January 23, 2020, the trial court heard evidence on the motion requesting permanent custody. Due to time constraints, the hearing was continued to April 2, 2020. On April 7, 2020, due to the COVID-19 pandemic, the trial court continued evidence on the motion requesting permanent custody to July 9, 2020. On June 27, 2020,

due to the COVID-19 pandemic, the trial court again continued the evidentiary hearing to September 3, 2020.

### Permanent Custody trial.

*Reasonable efforts.*

{¶11} Amy Craig ["Craig"] was the ongoing SCDJFS caseworker. She testified on January 23, 2020 that both Mother and Father were ordered to complete case plan services.

{¶12} Craig testified that the initial concerns in this case regarded Mother's ongoing mental health issues. According to Craig, Mother has a history of suicidal ideation, had previously been admitted to Heartland, and has not wanted to take mental health medication. Pursuant to her case plan, Mother was ordered to complete a parenting assessment and follow any recommendations. Mother did complete the assessment. The assessment recommended that Mother partake in comprehensive mental health treatment, complete the Goodwill parenting program, gain suitable housing, and participate in case management for the child.

{¶13} Mother had already been involved with counseling at Coleman Behavior Health ["Coleman"]. Mother continued to engage in mental health services at Coleman until October of 2019. Craig testified that Mother had not attended mental health treatment since October of 2019.

{¶14} Mother engaged in the Goodwill parenting program twice, but failed to successfully complete the program.

{¶15} Craig testified that Mother shoplifted at Walmart; however, no criminal charges were filed. Craig testified that Mother said that she shoplifted because she

believed the store was "poisoning people" with "GMOs". Shortly after the alleged shoplifting incident, Mother stopped engaging in counseling. Craig testified that she believed Mother's mental health concerns would interfere with her ability to parent M.W. For example, Mother allegedly stated that if shoplifting was wrong, God would have prevented her from doing it.

{¶16} Mother has consistently visited with M.W. during the duration of the case. Craig testified that Mother could become argumentative, but she observed good interaction between Mother and her child. Mother has stable housing. Her home was clean and tidy with very few safety concerns. The home contained food and toys. Mother receives a regular income through the SSI program[2].

{¶17} Dr. Aimee Thomas testified for SCDJFS on January 23, 2020. The parties stipulated to Dr. Thomas being an expert witness in the field of psychology. Dr. Thomas testified that she conducted a parenting evaluation on Mother. A copy of the evaluation was admitted into evidence as "DJFS Exhibit 1". Dr. Thomas testified that she had significant concerns for Mother's mental health, including her preoccupation with demons. Dr. Thomas testified that she diagnosed Mother with schizophrenia paranoid type, rule-out for psycho effective disorder, and bipolar disorder with psychosis. Dr. Thomas testified that her diagnosis was based on Mother's statements, including believing that medication would poison her, and that mental health treatment was unnecessary. Dr. Thomas testified that Mother's mental health would negatively impact her ability to parent a child. Dr. Thomas testified that she recommended Mother participate in comprehensive mental health treatment, case management services, psychiatric services, and Goodwill

---

[2] Supplemental Security Income (SSI) is a Federal income supplement program.

Parenting classes. Dr. Thomas opined that Mother's prognosis was "not favorable". Dr. Thomas stressed that natural remedies and supplements as well as "talk therapy" is not enough to adequately address Mother's mental health concerns.

{¶18} Dr. Thomas further testified that Mother had voluntarily presented herself for hospitalization at Heartland Behavioral Health because she had thoughts of hitting her mother with a mallet.

{¶19} April Bergert ["Bergert"] testified next for SCDJFS. Bergert testified that she was Mother's parenting instructor for the Goodwill Parenting program. Bergert testified that Mother participated in Goodwill Parenting classes on two occasions. Bergert testified that she wrote a report for each occasion, and those reports were later admitted into evidence as "DJFS Exhibit 3" and "DJFS Exhibit 4".

{¶20} Mother was first involved with Goodwill from February 18, 2019 through April 26, 2019. During Mother's first involvement with Goodwill, she scored a 56% on her pre-test and 85% on her post-test assessment. Eighty-five percent is a passing score. Bergert testified that Mother struggled with offering insight on her behaviors prior to M.W.'s removal, her current behaviors, and how such behaviors affect her child. Bergert also expressed concerns about Mother's interactions with her child, including speaking to him in a monotone voice. She did observe improvement in Mother's interactions with her child during the last four weeks of her first involvement with Goodwill. However, Mother failed to successfully complete the program because Goodwill did not see enough progress in all aspects of her programming including coping skills and positive lifestyle changes. Mother submitted all twelve of the goals she was told to complete, however, Goodwill only accepted four of those goals.

{¶21} Mother's second involvement with Goodwill began August 12, 2019 and ended October 18, 2019. Bergert testified that Mother demonstrated improvement during her second session, including in her interactions with her child. Despite said improvements, Bergert remained concerned about Mother's mental health and lack of insight about how her mental health conditions could affect her child. Bergert also remained concerned with Mother's flat affect when communicating with M.W. During her second involvement, Mother scored a 96% on her pre-test and 84% on her post-test assessments. She again submitted all twelve of her goals, yet only seven were accepted. Mother was again terminated unsuccessfully.

{¶22} Upon cross-examination, Bergert admitted that Mother's interactions with her child improved during her second involvement and that despite her "flat affect," Mother still communicated with her child. Bergert stated that in response to Mother's flat affect, the child would have a flat affect as well. Although Bergert stated several times that a parent's flat affect can have a negative impact on a child, she could provide no authority to support this assertion.

{¶23} When the permanent custody trial resumed on September 3, 2020, the state called Mother to testify during the reasonable efforts portion of the trial. Mother admitted that she had not gone to her original counselor for over a year. Mother testified that she had a new counselor, but would not state the name of the counselor. Mother later indicated that she had only been seeing the new counselor for three weeks. Mother testified that she did not believe that she had mental health issues.

*Best Interests*

{¶24} SCDJFS presented testimony regarding the best interest of the child.

Caseworker Craig again testified.  Craig testified that the child had no medical or developmental issues. Craig testified that the child had been placed in the same foster home for almost 24 months. Craig testified that the child is very adapted to his foster family. Craig testified that the foster family is interested in adopting the child.  Craig testified that there were no known appropriate relatives to care for the child.

{¶25}  Craig described Mother's visits with her child as "fair".  Craig testified that Mother spent a lot of time during visits talking about conspiracy theories instead of interacting with her child. Craig testified that Mother struggled with basic supervision of the child during visits. Craig testified that the child would benefit from permanency and adoption. Craig testified that permanent custody was in the best interest of the child.

{¶26}  Mother again testified during the best interest phase of the trial. Mother testified that she believed there was a bond between herself and her child. Mother has lived in the same apartment in Canton for the last two years. Mother's apartment has two bedrooms and she keeps it clean. The apartment complex has security cameras. Mother receives SSI and pays her bills on time. She is bonded with her child and wishes to raise the child.

{¶27}  The GAL for the child submitted a report that recommended that permanent custody be granted to the SCDJFS.

{¶28}  On January 25, 2021, the trial court issued its findings of fact granting permanent custody of the child to SCDJFS and terminating the parental rights of Mother. Specifically, the trial court found that, despite reasonable efforts by SCDJFS, the child could not and should not be placed with Mother within a reasonable amount of time, the

father of the child had abandoned the child, and the grant of permanent custody was in the child's best interest.

*Assignments of Error*

**{¶29}** Mother raises two Assignments of Error,

**{¶30}** "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶31}** "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Law and analysis*

**Standard of Appellate Review**

**{¶32}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." I*n re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law

allows."  Id. An award of permanent custody must be based upon clear and convincing evidence.  R.C. 2151.414(B)(1).

{¶33}  The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).  In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts.  The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself.  Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value.  *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.*  See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478.  (Emphasis added). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could

have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

### Requirements for Permanent Custody Awards

{¶34} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶35} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's

parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶36} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**1. Parental Placement within a Reasonable Time–R.C. 2151.414(B)(1)(a).**

{¶37} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151 .414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or

should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶38} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

\* \* \*

(16) Any other factor the court considers relevant.

{¶39} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶40} As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for

the child, and the testimony of the witnesses at trial.  The trial court was in the best position to determine the credibility of the witnesses.

{¶41} Expert testimony was presented during the permanent custody trial that demonstrated Mother's mental health concerns and her refusal or inability to acknowledge and address those concerns. As the trial court noted in its findings of fact,

Dr. Thomas reported that Mother was challenging to interview because of her inadequately addressed mental health disorder. As the evaluation progressed, Dr. Thomas found Mother's delusional beliefs became more evident. Mother has significant mental health concerns. Mother's lacks insight into her illness and because of that cannot follow through with services. Mother wants to use natural medications and supplements to care for her mental illness. Mother did voluntarily admit herself into Heartland Behavioral Health. This voluntary admission occurred after Mother had a physical altercation with her mother. Mother stated to Dr. Thomas, "I pictured myself hitting my mom and taking a mallet and hitting the TV set." Mother did clarify to Dr. Thomas that she did not physically assault her Mother, but left the residence before she engaged in violent behaviors. Mother then stated to Dr. Thomas, "Then some guy had a gun so I lied to get into a mental institution." Mother also expressed concern about taking medications because she feared they were poison. Mother worried that her son would be entered by demons. At one point in the interview, Mother stated, "I'm a target of demons and Satan and Satan's minions because I'm a Christian." Mother then discussed people with 200

spirits within their body and the Ouija board. Mother then stated, "I have not been suicidal for a while, but when you get drunk, spirits come out of your body." Dr. Thomas found it difficult to redirect Mother. Several times during the interview, Mother would go off subject and talk of the dark kingdom or the influence Satan had over the minds of other individuals. Dr. Thomas found Mother's presentation to be consistent with an individual who meets the criteria for a medically based mental health disorder such as Schizophrenia or Schizoaffective Disorder. Dr. Thomas found Mother to lack insight into concerns surrounding her mental health symptoms and Dr. Thomas found Mother to be quite invested in her delusional belief system. Because of these delusions, Dr. Thomas felt Mother may jeopardize the child's safety if she was not medicated and receiving mental health counseling. Following the clinical interview and testing, Dr. Thomas found Mother's presentation noteworthy and revealing of the severity of concerns regarding Mother's mental health. Dr. Thomas found Mother to have invested herself in a delusional belief system which is preoccupied with demons, Satan and her faith in God. Dr. Thomas wrote how in addition to experiencing psychosis, Mother presented with a thought disorder as manifested in her loose associations and disjointed accounts. Dr. Thomas found Mother's presentation suggestive of an individual who meets the criteria for Schizophrenia or Schizoaffective Disorder.

{¶42} The evidence demonstrated the successful efforts Mother had made on some parts of the case plan. On that point, the evidence demonstrates that any

improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of his case plan, she was still not able to be a successful parent to this child.

{¶43} In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶44} Based upon the foregoing, as well as the entire record in this case, the Court properly found M.W. could not or should not be returned to Mother within a reasonable time. Despite offering numerous services, Mother was unable or unwilling to mitigate the concerns that led to the child's removal.

## 2. The child had been in the temporary custody of the agency for a period more than twelve of the prior twenty-two consecutive months – R.C. 2151.414(B)(1)(d).

{¶45} Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22–month period. *In re: C.W.*, 104 Ohio St.3d 163, 2004–Ohio–6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this period, the court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12–month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004–Ohio–6411 at ¶ 26, 818 N.E.2d at 1180. Accord, *In re: N.C.,* 5th Dist. No. 2011-CA-00141, 2011-Ohio-6113, ¶32.

**{¶46}** Although the trial court did not make a finding that the child had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months pursuant to R.C. 2151.414(B)(1)(d), the record establishes that fact. Caseworker Craig testified that M.W. was removed from the home on June 7, 2018 and was adjudicated Dependent on August 30, 2018. T. Jan. 23, 2020 at 9. The motion for permanent custody was filed November 6, 2019. She further testified that the child had been in the custody of SCDJFS for over 12 months. Id. at 10. Thus, the record establishes that the child has been in the custody of the SCDJFS for over twelve months.

**{¶47}** This finding alone, in conjunction with a best-interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008–Ohio–5458, ¶ 45.

### 3. The Best Interest of the Child.

**{¶48}** We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶49}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers,

and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

{¶50}    A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. *In re Patterson,* 134 Ohio App.3d 119, 730 N.E.2d 439 (9th Dist. 1999); *In re Adoption of Ridenour,* 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991). Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re R.P. and I.S.,* 5th Dist. Tuscarawas No. 2011AP050024, 2011-Ohio-5378.

{¶51}  In the present case, the trial court's decision indicates it considered the best interest factors. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to SCDJFS. Upon review of the record, the record supports the trial court's finding that granting the motion for permanent custody is in the child's best interest.

{¶52}  The child is currently residing with a foster family and is doing well. He has been with the same family since he was born. The family is interested in adoption.

SCDJFS could not locate any relatives to provide permanency for this child. The GAL presented a written report to the trial court that recommended permanent custody be granted to the SCDJFS.

## Conclusion

{¶53} For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCDJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶54} Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur