[Cite as *In re L.E.*, 2022-Ohio-594.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| IN RE: L.E. | : | Hon. W. Scott Gwin, P. J. |
| L.E. | : | Hon. Patricia A. Delaney, J. |
| L.E. | : | Hon. Craig R. Baldwin, J. |
| L.E. | : |  |
|  | : | Case No. 2021 CA 0025 |
|  | : | 2021 CA 0026 |
|  | : | 2021 CA 0027 |
|  | : | <u>OPINION</u> 2021 CA 0028 |

CHARACTER OF PROCEEDING: Civil appeal from the Richland County Court of Common Pleas, Juvenile Division, Case Nos. 2018DEP00206, 2019 DEP 00098, 2019DEL 00242 & 2019 DEP 00099

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 1, 2022

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER ZUERCHER
TIFFANY BIRD
Richland County Childrens Services
731 Scholl Rd.
Mansfield, OH 44907

For Defendant-Appellant

JOHN C. O'DONNELL, III.
10 West Newlon Plac
Mansfield, OH 44902

*Gwin, P.J.*

{¶1}   Appellant-mother ["Mother"] appeals the April 19, 2021 Judgment Entry of the Richland County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her four minor children[1] and granted permanent custody of the children to appellee, Richland County Children Services  (hereinafter "RCCS").

*Facts and Procedural History*

{¶2}   Mother and Father[2] are the biological parents of Child 1, b. 08.20.2004, Child 2, b. 08.22.2006, Child 3, b. 09.25.2007 and Child 4, b. 06.02.2011[3].  Mother and Father are not married to each other. Mother is currently married to D.N.

{¶3}   Child 1 was found to be a delinquent child and a temporary order of temporary custody was issued on July 16, 2019. 1T. at 444-445.[4] Child 1 was subsequently placed in the temporary custody of RCCS by order filed October 10, 2019. 1T. at 445.   These orders were filed under the delinquency case number 2019-DEL-00242.  Id.  *See, also*, Court Exhibit B.

{¶4}   The case involving Child 2 was commenced with the filing of a Complaint on November 1, 2018. Child 2 was found to be a dependent child on August 14, 2019 and was placed in the temporary custody of RCCS by Judgment Entry filed September 4, 2019. 1T. at 443-444; Court's Exhibit A.

---

[1] Because the four children's initials are identical, in this Opinion the children will be referred to by number with the oldest child being Child 1 and the youngest child being Child 4.

[2] For the Father's appeal see, *In re L.E.*, 5th District Richland Case Numbers 2021CA0032, 2021CA0033, 2021CA0034 and 2021CA0035.  The instant appeal focuses upon those facts relevant to Mother's efforts to challenge the motion for permanent custody.

[3] See, OH ST Supp. R. 44(H) and 45(D) concerning the use of personal identifiers

[4] For clarity the transcript of the Permanent Custody hearings that took place in the trial court will be referred to as "__T.__, signifying the volume and the page number.

{¶5}    The case involving Child 3 was commenced with the filing of a Complaint on May 16, 2019. 1T. at 446; Court's Exhibit C. Child 3 was found to be a dependent child on August 14, 2019 and was placed in the temporary custody of RCCS on September 4, 2019.  1T. at 450; Court's Exhibit C.

{¶6}    The case involving Child 4 was commenced with the filing of a Complaint on May 17, 2019. 1T. at 445-446; Court's Exhibit D.  Child 4 was found to be a dependent child on August 14, 2019 and was placed in the temporary custody of RCCS on September 4, 2019.  1T. at 450; Court's Exhibit D.

{¶7}    The allegations of dependency as to Mother in the Complaint were: aggressive behaviors, educational neglect, exposing her children to domestic violence, a lack of parenting skills and/or other personal problems. Further, Child 2 was not attending school, and was engaging in bad behavior. Additionally, the children had issues with the step-father [D.M.] and stepfather's drug and alcohol abuse and domestic disputes with Mother.

{¶8}    Case plan objectives for Mother included that she attain appropriate housing, maintain employment, complete a mental health assessment, complete a drug and alcohol assessment, be able to meet the basis needs of the children, ensure that the children attended school, develop healthy relationships, engage in individual counseling and follow all recommendations. 1T. at 453; 556.

{¶9}    On February 28, 2020 Father filed a Motion for Legal Custody of the children. On September 30, 2020 RCCS filed a Motion for Permanent Custody of the children. A hearing on the motions was conducted by the trial court on March 22, April 5,

April 8, April 9, and April 12, 2021. Mother chose to attend only the April 9, 2021 hearing. 1T. at 191; 389; 627-628; 877. The following evidence was presented during the hearings.

## The needs of the children

{¶10}  In July 2019, delinquency charges were filed against the two eldest girls, Child 1 and an older sibling who is not a subject of the case at bar for stealing their Mom's vehicle and wrecking it. *Report of guardian ad litem,* Mar 16, 2021 at 14; Court's Exhibit E. Child 1 participated in a psychiatric evaluation at Catalyst Life Services on June 17, 2020. 1T. at 258-259. Child 1 reported that she had been participating in counseling every two weeks. RCCS Exhibit E. Child 1 suffers from depression, anxiety, and post-traumatic stress disorder. 1T. at 259-260. She has had suicidal ideation in the past, and has cut herself. She reported she presently has no suicidal thoughts. 1T. at 261; RCCS Exhibit E. She had been physically abused by her father. Child 1 has made some progress in therapy. She was prescribed Lexapro. 1T. at 262.

{¶11} Child 2 attended Catalyst Life Services and participated in an initial psychiatric evaluation on November 6, 2019.  1T. at 277.  Child 2 was diagnosed with Attention Deficit Hyperactivity Disorder. 1T. at 38. Concerns with Child 2 include attention span, profanity at school, not staying on task, starting fights and declining grades. 1T. at 38. It was reported that Child 2 had problems with an 8-year-old boy in his foster placement. 1T. at 60. Child 2 has mimicked Mother's propensity to address adults publicly with disrespect and using vulgar language.

{¶12}  On June 27, 2019, Child 3 was initially diagnosed with Adjustment Disorder with Mixed Disturbance of Emotions and Conduct. 1T. at 202. On August 29, 2019, Child 3's diagnosis was changed to Oppositional Defiant Disorder. 1T. at 203.  Child 3 is an

extremely angry child. She is disrespectful toward adults, obstinate and purposefully defiant. 1 T. at 205-208; RCCS Exhibit C.  Child 3 is unwilling to accept any blame for her behavior. She is reactive to this anger through the learned behaviors she has witnessed throughout her life. RCCS Exhibit C. Child 3 has been unsuccessful in the home environment, foster placements and in school. RCCS Exhibit C.  Child 3 indicated that she worries about her mother. 1T. at 209. Child 3 does not like either her Father or her step-father. Id.

{¶13}  Child 4 has been diagnosed with General Anxiety Disorder, Post-Traumatic Stress Disorder, Oppositional Defiant Disorder and Pica which refers to the eating of non-nutritive substances. 1T. at 231-233.  She is defiant to her foster parent and counselor. 1T. at 234. Child 4 tears things, throws things, is rude, disrespectful and engaged in fighting at school. 1T. at 234-235. Child 4's behavior did not improve with counseling. 1T. at 239; RCCS Exhibit D.

### Mother's case plan.

{¶14} Case plan objectives for Mother included that she attain appropriate housing, maintain employment, complete a mental health assessment, complete a drug and alcohol assessment, be able to meet the basis needs of the children, ensure that the children attended school, develop healthy relationships, engage in individual counseling and follow all recommendations. 1T. at 453; 556.

### Mother's mental health evaluation

{¶15} Dr. Aimee Thomas a psychologist and licensed professional clinical counselor for Lighthouse Family Center met with Mother on June 4, 2020. 1T. at 24. Dr.

Thomas completed Mother's parenting evaluation report on July 31, 2020. RCCS Exhibit A; 1T. at 24-25.

{¶16} Although Mother signed a Release of Information with the assigned guardian ad Litem, the RCCS and the Richland County Family Court, she additionally wrote on the signature line "Not agree was forced to sign." RCCS Exhibit A.

{¶17} Mother reported that an older half-sibling of the children had been removed from her custody in the past. 1T. at 29-30. Further, Mother allowed another child from a previous relationship to be adopted. Id.

{¶18} Mother met her present husband, D.N. shortly before he was incarcerated in 2013 for drug and alcohol related offenses. Mother married him in 2014 while he was incarcerated. D.N. resumed his problematic use of alcohol after his release from prison in 2015. However, Mother insisted that her husband had been sober for nine months with the support of a court ordered residential treatment program. 1T. at 30; RCCS Exhibit A.

{¶19} Mother admitted that although the children did not see physical aggression occur in her relationship with Father, the children likely heard it and saw the aftermath. 1T. at 32. Mother reported that Father was physically and verbally abusive toward the children. Id.

{¶20} Mother made it clear to Dr. Thomas that she did not want to participate in the evaluation. 1T. at 34. Mother used the interview time to vent her frustration and anger with RCCS. Id. Mother denied alcohol and drug use.

{¶21} Dr. Thomas reviewed the mental health records of the children as part of her assessment. 1T. at 34. Dr. Thomas concluded that the behavior of the children pre-

dated the grant of temporary custody to RCCS. 1T. at 39. In other words, the children's home environment contributed to the behavioral problems of the children.

{¶22} Dr. Thomas diagnosed Mother as Other Specified Personality Disorder - anger management issues, stubborn, histrionic, poor insight. RCCS Exhibit A. Mother was further diagnosed as Dependent Personality Disorder. 1T. at 31. Mother sees herself as a fine, normal person who does not need treatment or services to assist her in raising her children. 1T. at 33.

{¶23} Dr. Thomas recommended Mother participate in weekly individual counseling to develop insight into how her approach to raising her children has contributed to their current emotional and behavioral problems and involvement with RCCS. Counseling should specifically assist Mother with anger management. If Mother's anger and attitude do not improve with the support of individual counseling, Dr. Thomas would recommend Mother participate in formal anger management treatment services. Further, Dr. Thomas recommended Mother participate in an intensive parenting program and consult with her children's treatment providers. RCCS Exhibit A.

{¶24} Mother did not successfully address her anger management issues or complete a parenting program.

### Mother's interaction with the children.

{¶25} In November of 2018, Child 2's Mother's current husband, D.N. burned items of clothing Child 2 had been given in the driveway of their home.

{¶26} On May 31, 2019, the trial court entered an order limiting the contact between the minor children and the parents due to a long history of the parents coaching and/or threatening the children regarding their communication to third parties. Visitations

were set at the agency and neither parent was to have contact/communication with the children outside of their visits.

{¶27}   On July 1, 2019, the agency filed an emergency Motion to suspend the visits between the children and Mother due to the visits being so chaotic and detrimental to the children. Specifically, the agency had to contact law enforcement to deal with Mother during a visit because of Mother yelling and screaming, becoming aggressive toward RCCS staff supervising the visit. 1T. at 363-369; RCCS Exhibit J; *Report of guardian ad litem,* Mar 16, 2021 at 12.

{¶28}   Father obtained a civil protection order against Mother on July 11, 2019 that included a provision of no contact with the children, except as provided by the Court. The CPO was obtained because Mother threw a brick at Father's car while he and the children were in the car. GAL Exhibit 1.

{¶29}   During visits between Mother and the children at Children Services, Mother became aggressive and confrontational with agency staff, and by her behavior caused Child 3 and Child 4 to do the same. Mother used loud profanity at the visit. Mother called the supervisor a bitch, and thereafter Child 3 and Child 4 called the supervisor names multiple times. 1T. at 366-367; 377-378; RCCS Exhibit J.   Child 3 attempted to hit the supervisor with a plastic toy. 1T. at 377.   Mother denied any inappropriate behavior occurred during her visitation with her children. 1T. at 781.   Mother attributed the children's behavior during her visits to their not wanting to visit at RCCS and their desire to come home. Id.

{¶30}   Child 2 has mimicked Mother's propensity to address adults publicly with disrespect and using vulgar language.

{¶31}  A chaotic event occurred during a meeting at the trial court with Mother, Father, Child 3, Child 4 and agency staff during February of 2021. During that meeting, Mother and the two girls began yelling at Father, and he reciprocated. Security came to the room to quell the disturbance and ensure there was no harm caused to anyone. 1T. at 468-469.

{¶32}  Mother has had only telephone contact with the children for over one year. 1T. at 480.

### Mother's counseling

{¶33}  Mother began counseling with Jason Elliot, a licensed social worker under supervision at PsyCare January 4, 2021. 2T. at 707. Elliot has reviewed the evaluation conducted by Dr. Aimee Thomas. 2T. at 700-701. The sessions were conducted via Zoom; Mother was never physically present in Elliot's office. 2T. at 702.

{¶34}  Elliot diagnosed Mother as Borderline Personality Disorder. 2T. at 704; 708. Elliott's diagnosis was based upon Mother's argumentative behaviors, narcissistic tendencies in her not accepting accountability or responsibility; blaming others for Mother's previous and past actions; Mother's not being able to accept consequences for thoughts, actions, behavior; Mother's instability and mood swings; aggressive language and Mother's overly loud and disruptive disposition. 2T. at 708.  Mother refused to sign releases for Elliott to obtain records, 2T. at 726.

{¶35}  Mother denied any domestic violence occurred in the home. 2T. at 717. Mother's explanation for waiting to seek treatment was that she did not do anything wrong. 2T. at 729.  Mother denied that she used either alcohol or any type of drug.

{¶36} Elliott recommended Mother engage in anger management parenting classes and a psychological evaluation in addition to his weekly counseling sessions. 2T. at 703.

### Mother's employment and housing

{¶37} Mother and her husband presently live in Warren, Ohio. 2T. at 634. Prior, the pair had lived in Trumbull County and Richland County. Id. The present residence is described as a townhouse. 2T. at 635. It has two, possibly three bedrooms. Id. Mother testified that she has never been homeless. 2T. at 636.

{¶38} Mother has an STNA license and is currently employed. 2T. at 636; 638. Mother is presently studying to become a phlebotomist. 2T. at 638. She anticipated taking her exam on May 12, 2021 and graduating from the program on June 24, 2021. Mother has been consistently employed. 2T. at 638-640. Mother testified that she can meet all the financial needs of her home. 2T. at 641.

{¶39} Mother admitted to being evicted from two homes and to living with her husband in his semi-truck and accompanying him on his employment for several weeks. 2T. at 778- 780; 846.

### D.N. the husband and step-father

{¶40} D.N. testified that he is currently employed. 2T. at 824. D.N. further testified that he is attending school to obtain his certification to operate heavy machinery. Id. D.N. testified that he is scheduled to graduate from the program May 5, 2021. Id.

{¶41} D.N. admitted to having had a substance abuse problem. 2T. at 825; 842. D.N. testified that he completed a three month in-patient treatment program from September through October, 2019 at Teen Challenge in Youngstown, Ohio. 2T. at 825-

826. After his release, D.N. testified he sought counseling treatment with Travco. 2T. at 827-828. The agency helped to address both substance abuse and mental health concerns. 2T. at 828. D.N. testified that Dr. Yendrek who prescribed medication for him. 2T. at 828-829. Further, D.N. testified that he additionally meets once a month with Cortney, a mental health counselor at Travco. 2T. at 830. He has been in counseling for the past three months. Id. D.N. testified that he and Mother began attending marriage counseling at Restored Hope about one month ago. 2T. at 831.

{¶42} D.N. admitted that he has had an alcohol problem for a number of years. 2T. at 833. D.N. testified that he has been sober for over 19 months. 2T. at 835. D.N. further admitted that he was convicted of vandalism in Richland County in 2020. 2T. at 833. D.N. admitted that he had burned clothing in the driveway of the home that had been given to Child 2. 2T. at 834. D.N. denied that he was ever physically violent with Mother. 2T. at 843. D.N. admitted that he had attempted suicide at least twice in the past. 2T. at 844.

{¶43} D.N. never signed a release of information to RCCS, only Mother's attorney. 2T. at 852-853. No records were presented or admitted into evidence concerning D.N.'s employment, counseling or treatment.

**Placement of the Children**

{¶44} Child 1 and Child 4 are currently in different foster placements in Mansfield, near Father's home. Child 3 is in a foster placement in Upper Sandusky. Child 2 is in a foster placement in Dayton.

{¶45} Child 2 and Child 3 have been placed in other cities in Ohio because they disrupted their foster home placements. Child 2 previously threatened to push a foster

parent down the stairs. Child 3 has been placed elsewhere because of choking a person. Child 3 has been in five different placements. Child 1 and Child 4 have been in their respective placements for over a year.

**{¶46}** The fact that the children were placed in different locations has made visitation for the Father difficult to achieve. On occasion he drove seven hours one way to pick up his children, and the same amount of time to return them after visitation. The agency has offered modest help with transportation cost

### Recommendations

**{¶47}** The guardian ad litem ["GAL"] has investigated this case and the circumstances of the children, has participated in this case and has filed a written report with the court. The GAL recommends that the children should be placed in the permanent custody of RCCSB and that such an order would be in their best interest. 2T. at 607; Court's Exhibit E.

**{¶48}** The ongoing caseworker in this matter, based upon her testimony, is of the opinion that all the children should be placed in the permanent custody of RCCSB, and that such an order would be in the children's best interest. 1T. at 566-567.

### Entry granting permanent custody

**{¶49}** The trial court found by clear and convincing evidence pursuant to R.C. 2151.414(B)(1)(d) that each child was in the temporary custody of RCCS for more than 12 consecutive months of a 22-month period of time. In the alternative, the Court found by clear and convincing evidence that the children cannot be placed with either parent within a reasonable period of time, and should not be placed with such parents pursuant to R.C. 2151.414(B)(1)(a), R.C. 2151.414(D), (E)(1) and (E)(4), specifically citing the

parents' failure to remedy the problems that initially caused each child to be placed outside the home. The trial court noted Mother's consistent and repeated failure to position herself to assume the responsibilities associated with the full-time care of her children. The trial court further found that Mother,

Has demonstrated a lack of commitment towards the children by her consistent failure to adequately and sufficiently address her own deficiencies to thusly position herself to be able to provide for the child[ren]'s basic needs. Mother's continuous, deplorable behavior modeled for the children and imitated by them, as described in the above findings of fact; her reluctance in obtaining a psychological evaluation and following up with counseling; her husband's abuse of her and the children and his alcohol and pill addiction; her commitment to an abusive husband over her children, particularly after he burned [Child 2's] clothing in the driveway; her failure to ensure [Child 2]had proper schooling and her lack of provision of food at times.

\* \* \*

Both parents have mental health issues that make a return to either parent contrary to the best interests of each child. Their mental health issues have created chaos for the children and modeled anti-social behavior patterns that the children have also exhibited. There is no reason to believe that the parents have remedied the problems that led to the removal of their children. If the children were placed with either parent, it is most likely that the children's behavior would deteriorate again.

Assignments of Error

{¶50} Mother appeals raising two Assignments of Error,

{¶51} "I. TRIAL COURT'S CONCLUSION THAT PERMANENT CUSTODY WAS WARRANTED IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶52} "II. THE TRIAL COURT ERRED IN FINDING THAT RICHLAND COUNTY CHILDREN SERVICES MADE REASONABLE EFFORTS TO REUNITE THE CHILDREN WITH APPELLANT/MOTHER."

I & II

**Standard of Appellate Review**

{¶53} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id. An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

{¶54} The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the

extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986). In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2T 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

### Requirements for Permanent Custody Awards

{¶55} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶56} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or

more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶57} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**The child had been in the temporary custody of the agency for a period more than twelve of the prior twenty-two consecutive months – R.C. 2151.414(B)(1)(d).**

{¶58} Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22–month period. *In re: C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this period, the court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12–month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004-Ohio-6411 at ¶ 26, 818 N.E.2d at 1180. *Accord, In re: N.C.,* 5th Dist. No. 2011-CA-00141, 2011-Ohio-6113, ¶32.

{¶59} As we have previously noted in our review of the procedural history of these cases, the record establishes that each child had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months at the time the permanent custody motion was filed. 1T. at 443-450. Child 1 has been placed out of their home for the last 21 months; Child 3 and Child 4 have been placed out of the home for the last 19 months; Child 2 has been placed out of the home for the last 18 months.

{¶60} As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

{¶61} Because Mother has not challenged the twelve of twenty-two-month finding as to the children, we would not need to address the merits of Mother's assignments of error. However, even if we consider Mother's arguments the trial court did not err in determining the children cannot be placed with Mother at this time or within a reasonable period of time.

**Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a).**

{¶62} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should

not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶63} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

\* \* \*

(16) Any other factor the court considers relevant.

**{¶64}** As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

**{¶65}** In the case at bar, Mother has consistently, defiantly and vocally refused to accept any responsibility for her children's poor behavior. Mother has shown little interest in working with RCCS or anyone to reunify with her children. Mother continually blames others for her and her children's situation. Mother has had two older children from previous relationships removed from her custody. 1T. at 30. Despite offering numerous

Richland County, Case Nos. 2021 CA 0025, 2021 CA 0026, 2021 CA 0027, & 2021 CA 0028 21

services, Mother was unable or unwilling to mitigate the concerns that led to the children's removal.

**{¶66}** A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. *In re Shchigelski*, 11th Dist. Geauga No. 99–G–2241, 2000 WL 1568388(Oct. 20, 2000); *In re McKenzie*, 9th Dist. Wayne No. 95CA0015, 1995 WL 608285(Oct. 18, 1995). A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed—the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.,* 8th Dist. No. 84368, 2004–Ohio–6024, ¶ 20; *In re Mraz*, 12th Dist. Nos. CA2002–05–011, CA2002–07–014, 2002–Ohio–7278. In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶67}** The evidence demonstrated the very little successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of her case plan, she was still not able to be a successful parent to these children.

{¶68} We find there is competent and credible evidence to support the trial court's determination that the children cannot be placed with Mother within a reasonable time or should not be placed with Mother.

**Reasonable Efforts**

{¶69} In her Second Assignment of Error, Mother contends the trial court abused its discretion in finding RCCS made reasonable efforts to reunify the children with Mother. The Mother argues that RCCS never assisted her to set up counseling, assessment, treatment or other case plan requirements.

{¶70} The Supreme Court of Ohio in *In re C.F.*, 113 Ohio St. 3-D 73, 78, 862 N.E. 2T 816, 821(2007) noted,

[N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151. 01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151. 412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151. 413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule'- '[I]f reasonable efforts to return the child to the child's home are required

under section 2151. 419' and the agency has not provided the services required by the case plan.

{¶71} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety is paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

{¶72} R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

{¶73} However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue is the reasonableness of the Department's efforts, and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767(Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶19

{¶74}  We find there is competent and credible evidence to support the trial court's determination that RCCS efforts were reasonable and diligent under the circumstances of the case.

{¶75}  The trial court found that neither parent has made significant progress on the case plan. No motion was made to extend the order of temporary custody to the agency. The trial court found that RCCS filed a case plan. RCCS did make referrals. Mother's delay in seeking an appointment with Dr. Thomas contributed to the short period of time Mother had to work on her objectives. Mother's refused to contact RCCS contributed to the delays and any lack of referrals. 1T. at 458.

{¶76}  Mother chose to attend only one day of the multiple day permanent custody hearing. The record makes clear Mother refuses to accept any responsibility for the children's poor behavior and instead blames RCCS. The record is clear that Mother does not believe she needs help and that she did nothing wrong.

{¶77}  We find that the record supports that RCCS was working toward the goal of reunification. We find no evidence of dishonest purpose, conscious wrongdoing, or breach of duty on the part of RCCS.

{¶78}  Having reviewed the record, we find that RCCS made a good faith effort to reunify Mother and her children. Furthermore, the record contains clear and convincing evidence to support the court's determination that the children could not be placed with Mother.

**The Best Interest of the Children**

{¶79}  An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the

child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26. R.C. 2151.414(D)(1) sets out a nonexhaustive list of factors the court must consider:

{¶80} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶81} The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

{¶82} No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* Slip Opinion No. 2020-Ohio-5102, 2020WL6439610 (Nov. 3, 2020). ¶33.

{¶83} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶84} We conclude that the juvenile court's judgment entry demonstrates that the court complied with R.C. 2151.414(D)(1).

{¶85} The trial judge specifically found that it was in the children's best interest to award permanent custody to the department. The juvenile court judge also individually cited each of the factors set out in R.C. 2151.414(D)(1)(a) through (e), in language tailored to the facts of this case. The trial judge noted the each child's wishes, the child's difficulties in foster care placement, and the interrelation of the siblings to each other. Ultimately, the trial court came to the difficult decision that the wishes of the children are at odds with their best wishes. After over two years, Mother has steadfastly refused to accept responsibility or to set about the task of becoming a loving, nurturing parent capable of modeling the type of safe, calm and productive behavior that the children need. Nothing in the record before us demonstrates that more time or a return of custody to the Mother will in any way benefit the children.

{¶86} In the present case, the trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to RCCS.

Upon review of the record, we find that the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest.

{¶87} In short, the juvenile court's judgment entry demonstrates that the court satisfied its statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

## Conclusion

{¶88} For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore the children could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to RCCS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶89}   Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's two assignments of error, and affirm the decision of the Richland County Court of Common Pleas, Juvenile Court Division.

By Gwin, P.J,

Delaney, J., and

Baldwin, J., concur

WSG:clw0214